# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | | |
|---|---|---|
| ANTHONY D. NICHOLSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:11-cv-0355 |
| | ) | Judge Trauger |
| CITY OF CLARKSVILLE, | ) | Magistrate Judge Knowles |
| | ) | |
| Defendant. | ) | JURY DEMAND |

## CASE MANAGEMENT ORDER

A Case Management Conference is scheduled to be held in the above-entitled action on **Monday, August 22, 2011**, at **1:30 p.m**. Pursuant to Local Rule 16.01(d)(1)(b), the parties submit this Proposed Case Management Order for entry by the Court.

A    **JURISDICTION:** The court has jurisdiction pursuant to 28 U.S.C. § 1331 and the Civil Rights Act of 1991, 42 U.S.C. 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e; and the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.*.

B.    **BRIEF THEORIES OF THE PARTIES:**

1)    *PLAINTIFF'S THEORY:*

Plaintiff, **ANTHONY NICHOLSON**, ("Plaintiff") was an African-American male employee of the Defendant, **THE CITY OF CLARKSVILLE**, ("Defendant"). Defendant has a department within it known as the "Parks and Recreation" which is tasked with general maintenance and upkeep duties related the parks and of other public areas of Clarksville. Plaintiff was employed by the City of Clarksville as a maintenance worker for the Defendant's Parks and Recreation Department from December of 2004 until his termination in 2011.

Throughout Plaintiff's employment he has been denied promotion to other jobs because of his race wherein white employees with the same or lesser qualifications were promoted. In 2007, Plaintiff approached supervisor, James Crotty (white male), and asked why he was not being considered or interviewed for job openings within the department. Mr. Crotty responded to Plaintiff that he wasn't going to promote him. Mr. Crotty pulled Plaintiff's application out of the trash can, wadded it up in front of Plaintiff and told him he wasn't going to "waste" his time interviewing Plaintiff. Plaintiff was complaining about discrimination. During this time, Defendant hired a white male as an M2, a position Plaintiff was eligible to be promoted into.

Plaintiff and other African American employees have been cussed in front of crews with no disciplinary action being taken against the perpetrators. In 2007, Plaintiff was cussed by a white employee (James Clark). Plaintiff complained but was then disciplined for the altercation. On that same day Plaintiff witnessed an African American employee (Marlon Matthews) cussed by a white employee (John Walk) in front of other employees. No disciplinary action was taken against Mr. Walk.

Plaintiff reported to his supervisor the fact the employees in the Parks and Recreation Department were being segregated by their race in 2007. When crews were dispatched to one (1) of the local parks for maintenance work, the crews were divided to where African Americans were relegated to one (1) side of the park while white employees were sent to the other. Plaintiff's supervisor, Richard Davis, told Plaintiff to "mind his own business."

Again in 2007, Plaintiff and another African American employee, Demetrios Washington, went to the maintenance shop on Franklin Street. While there Mr. Washington began speaking to a white female at the shop. During their conversation, they were approached by a white employee who called the white female a "nigger lover" in front of Plaintiff and Mr.

Washington. This was not an isolated event and Plaintiff has witnessed white employees and supervisors refer to African American employee, Derrick Willis, as "Blue" (a word used to derogatorily refer to African Americans).

In 2008, Plaintiff witnessed a white employee physically kick an African American employee, Mose Garrett, in the butt in front of a supervisor and other employees. The supervisor did nothing to correct the situation but instead simply stood there, laughed, and ridiculed the African American employee.

In 2008, Plaintiff applied for an M2 position, which would have been a promotion. Plaintiff sought assistance from the Human Resources Department. Plaintiff was ultimately interviewed by a white employee, James Crotty, and passed over for the promotion for another white applicant who was less qualified than Plaintiff.

In November 2008, Plaintiff witnessed a noose hung in the tree at McGregor Park which he was tasked to hang the city Christmas lights in one (1) month after Plaintiff witnessed a noose hanging from the rear view mirror of a truck parked at the City maintenance department on Franklin Street.

In January of 2009, Plaintiff was assigned to work the Greenway Trail on Pollard Road. Plaintiff was assigned to work with a white employee who cussed Plaintiff and referred to him as "boy." This employee made it clear that he did not like working with Plaintiff and requested Plaintiff be reassigned. Plaintiff was transferred to the fairgrounds. At no time was Plaintiff interviewed or questioned about what had happened.

In 2009, Plaintiff again applied for two (2) different jobs within the department but was passed over for white employees. Plaintiff was as qualified if not more qualified than those selected for the positions. After complaining about his non-selection, Plaintiff was told by Gary

3

Harp, Director of Parks and Recreation, that he would never be promoted and that he should just give up.

Plaintiff was subjected to a racially hostile environment. Furthermore, Plaintiff was discriminated against due to his race and retaliated against for complaining about discrimination when it came to promotions and job assignments.

2) *DEFENDANT'S THEORY AND DEFENSES:*

Defendant, City of Clarksville, ("Defendant"), submits that Plaintiff's allegation of race discrimination, failure to promote, and retaliation are without merit.

Plaintiff worked as a maintenance worker for the City of Clarksville Parks and Recreation Department from December 2004 until March 11, 2011. Plaintiff's employment classification was Maintenance Worker Level 1. Defendant acknowledges that several times during the course of his employment, Plaintiff sought promotion to the position of Maintenance Worker Level 2 but was denied promotion because he did not have the skill set necessary to qualify for the position. Specifically, on at least two (2) occasions Plaintiff was provided the opportunity to perform certain tasks that would have verified the skill sets necessary to qualify for a Maintenance Worker Level 2 position but he failed to accomplish the tasks provided. These included welding skills (which he failed twice), repair of plumbing fixtures and possessing a valid Tennessee commercial driver's license. The initial opportunity for the position of Maintenance Worker Level 2 initially occurred in May 2009. As the result of Plaintiff's failed efforts, he was deemed not qualified for the Maintenance Worker Level 2 position. Thereafter, Plaintiff did nothing to acquire the necessary skill sets or establish a valid Tennessee commercial driver's license and, thus, was denied the opportunity to interview for subsequent Level 2 vacancies in September 2009 and January 2010.

4

Defendant submits that Plaintiff has been disciplined several times throughout his employment regarding his attitude, inappropriate verbal responses to supervisors, and verbal altercations with fellow employees, including threatening physical harm against another employee which occurred in November 2009. As a result, Plaintiff was placed on a ten day suspension without pay and required to complete an assessment and recommendation for anger management control. Defendant denies that non-minority employees who engaged in similar behavior were not disciplined. Defendant further denies that Plaintiff or other minority employees were subject to racial harassment or mistreated by fellow employees or supervisors because of their race.

Defendant acknowledges that there were two (2) incidents in which a rope fashioned as some sort of "noose" was found in the workplace. The first occasion occurred in mid-October 2008, involved a thin, yellow, nylon cord or rope hanging over a rear view mirror in a City truck. The second occasion occurred on November 18, 2008, when two (2) managers in the Parks and Recreation Department observed another yellow cord tied to a branch on a tree in the park. The "noose" was removed and turned over to the Park Ranger Division for investigation. Defendant also requested the Tennessee Bureau of Investigation to conduct an investigation. Through these respective agencies, Defendant conducted a thorough investigation regarding the incident. Neither investigation found any evidence that anyone employed by the City was responsible for either incident. While no individual responsibility was identified regarding either of these incidents, a recommendation was made by the Tennessee Bureau of Investigation to conduct diversity training sessions with all regular full time employees to increase their sensitivity to diversity issues. This training was completed in early 2009.

Defendant also denies that Plaintiff and other minority employees were assigned different tasks based upon their race, or otherwise segregated in their work crews. The work crews utilized by the Parks and Recreation Department are not segregated into black or white work crews. Rather, composition of the groups is based primarily on the skill sets needed to perform the various tasks.

Finally, Plaintiff had his work assignment changed from the Rails to Trails crew to the fairgrounds after he became involved in a verbal altercation with a Street Department Crew Chief. Plaintiff was uncooperative and refused to identify himself despite being asked to do so repeatedly by the Street Department Crew Chief. The Street Department Crew Chief contacted the Parks and Recreation Maintenance Supervisor requesting that the Plaintiff leave the job site and not be allowed to return. This change was based upon Plaintiff's attitude and not his race. There is no basis to support the claim that the Crew Chief had acted inappropriately.

*LEGAL POSITION:* It is Defendant's position that many of the causes of actions alleged in the Complaint are barred by the applicable statute of limitations, specifically Plaintiff's claims under *42 U.S.C. § 1983* and the Tennessee Human Rights Act are barred by the one (1) year statute of limitations. Furthermore, Plaintiff has failed to exhaust his administrative remedies under Title VII of the Civil Rights Act of 1964 for virtually all allegations alleging racial discrimination except those contained in Paragraph 21 and 22 of the Amended Complaint regarding Plaintiff's seeking of a promotion to Maintenance Worker Level 2 position in 2009. As a result, Defendant has filed a Motion for Partial Judgment on The Pleadings, and Requests to Stay Discovery while the Plaintiff responds to the motion and the Court issues its ruling.

    C.    **ISSUES RESOLVED**: Jurisdiction and venue.

    D.    **ISSUES STILL IN DISPUTE:** Liability and damages.

E.  **INITIAL DISCLOSURES:**  The parties shall make their Rule 26(a)(1)(A) through (E) disclosures within thirty (30) days from the date of the initial case management conference, on or before **Thursday, September 22, 2011**.

F.  **DISCOVERY:**  Counsel for the parties have discussed Defendant's pending motion and agree that the timelines established herein should be sufficient to allow the Court to rule on Defendant's motion and complete discovery.  Given the nature of its motion, Defendant submits that if its motion is granted, it will narrow the claims asserted in this matter and reduce the scope of discovery. Therefore, Defendant submits that discovery should be stayed until the Court issues its ruling.

The parties shall complete all written discovery and depose all fact witnesses on or before **Monday, May 28, 2012**.  Discovery is not stayed during dispositive motions, unless ordered by the court.  Local Rule 9(a)(2) is expanded to allow forty (40) interrogatories, including subparts.  No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger.

G.  **MOTIONS TO AMEND:**  The parties shall file all Motions to Amend on or before **Friday, January 20, 2012**.

H.  **DISCLOSURE OF EXPERTS:** The Plaintiff shall identify and disclose all expert witnesses and expert reports on or before **Monday, February 20, 2012**.  The Defendant shall identify and disclose all expert witnesses and reports on or before **Wednesday, March 21, 2012**.

I.  **DEPOSITIONS OF EXPERT WITNESSES:**  The parties shall depose all expert witnesses on or before **Friday, May 4, 2012**.

J. **JOINT MEDIATION REPORT:** The parties shall file a joint mediation report on or before **Monday, April 2, 2012**.

K. **DISPOSITIVE MOTIONS:** The parties shall file all dispositive motions on or before **Monday, July 2, 2012**. Responses to dispositive motions shall be filed within twenty (20) days after the filing of the motion. Optional replies may be filed within ten (10) days after the filing of the response. Briefs shall not exceed twenty (20) pages. No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the court.

L. **ELECTRONIC DISCOVERY:** The parties do not anticipate that electronic discovery is necessary in this case, but to the extent it is necessary they will agree on how to conduct electronic discovery. Thus, the default standard contained in Administrative Order No. 174 need not apply to this case.

M. **PRIVILEGED INFORMATION:** Regarding the handling of privileged information, the parties believe that there may be documents and other information that may be produced in discovery that are commercially sensitive or otherwise confidential in nature. The parties will work together to agree on a form of protective order that includes special procedures and a mechanism for the appropriate protection of such information and for filing certain documents under seal when necessary, and submit the proposed protective order to the court for its approval.

N. **ESTIMATED TRIAL TIME:** The parties expect the trial to last approximately four (4) to five (5) days.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
U.S. District Judge

*APPROVED FOR ENTRY:*

/s/ Andy L. Allman
Andy L. Allman, BPR No. 17857
KELLY, KELLY & ALLMAN
629 East Main Street
Hendersonville, Tennessee 37075
Telephone: (615) 824-3703
Facsimile: (615) 824-2674
andylallman@comcast.net

/s/ Andrew C. Clarke
Andrew C. Clarke, BPR No. 15409
6250 Poplar Avenue, Second Floor
Memphis, Tennessee 38119
Telephone: (901) 590-0761
Facsimile: (901) 590-0776
aclarke@accfirm.com

*Attorneys for Plaintiff*


/s/ Matthew C. Lonergan
Matthew C. Lonergan, BPR No. 10798
Shana G. Fonnesbeck, BPR No. 29162
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
P.O. Box 340025
Nashville, TN 37203
mlonergan@babc.com
sfonnesbeck@babc.com

*Attorneys for Defendants*


## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing has been forwarded by electronic means via the Court's electronic filing system this 17th day of August, 2011.

                                              /s/ Andy L. Allman
                                              Andy L. Allman